[755 NYS2d 159]

In the Matter of ORCHARD GLEN RESIDENCES AND CARRIAGE HOMES, L.L.C., et al., Appellants, v ERIE COUNTY INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents.

Fourth Department, February 7, 2003

**APPEARANCES OF COUNSEL**

*Arthur J. Giacalone*, East Aurora, for appellants.

*Hurwitz & Fine, P.C.*, Buffalo (*Dan D. Kohane* of counsel), for Erie County Industrial Development Agency, respondent.

*Blair & Roach, LLP*, Tonawanda (*Larry Kerman* of counsel), for Presbyterian Homes of Western New York, Inc., respondent.

**OPINION OF THE COURT**

SCUDDER, J.

Petitioners appeal from a judgment dismissing their petition pursuant to CPLR article 78 seeking, inter alia, to annul the determination of respondent Erie County Industrial Development Agency (ECIDA) that the total cost of the retirement community project for which respondent Presbyterian Homes of Western New York, Inc. (PHWNY) sought financial assistance did not exceed the statutory limit of $20 million (*see* General Municipal Law § 854 [13]). Only the second and sixth claims contained in the petition are relevant to this appeal.

At the center of this appeal is the interpretation of General Municipal Law § 854 (13), which provides in relevant part that a " '[c]ivic facility' * * * shall mean any facility which shall be owned or occupied by a not-for-profit corporation organized and existing under the laws of this state or authorized to conduct activities in this state. * * * [A] civic facility project may include * * * housing facilities primarily designed to be occupied by individuals sixty years of age or older provided that the total cost of such projects * * * does not exceed twenty million dollars." Here, PHWNY sought financial assistance from ECIDA for development of the first phase of a proposed retirement community. The original total estimated cost of the project as set forth in the application to ECIDA was $21,301,000, which included $6,368,000 in "[s]oft costs." The application was thereafter amended to reduce the amount of " '[s]oft' costs" to $4,735,000, thereby reducing the total estimated cost of the project to $19,668,000. ECIDA adopted a special resolution dated July 11, 2001 ratifying and confirming its determination that the cost of the project would be less than $20 million.

Petitioners contend that the phrase "total cost of such project[ ]" in General Municipal Law § 854 (13) refers to all of the costs related to the development of the facility, that the total estimated cost of the project herein exceeds the $20 million limit imposed by that section, and that ECIDA therefore is

without authority to issue bonds in the amount of $20 million. Respondents contend that the phrase "total cost of such project[ ]" refers to the amount of project costs for which ECIDA is authorized to issue bonds. The phrase has not previously been interpreted by an appellate court. We agree with respondents.

" 'Where [a] statute is clear and unambiguous on its face, the legislation must be interpreted as it exists. Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute.' * * * 'It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used' " (*Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 674-675). Although the phrase "total cost of such project[ ]" appears at first blush to be clear and unambiguous on its face, it actually is subject to more than one interpretation when viewed in terms of the functions of industrial development agencies. Thus, we look to the legislative history of section 854 (13) for guidance with respect to the intent of the Legislature.

Subdivision (13) was added to General Municipal Law § 854 in 1997 (*see* L 1997, ch 444, § 2) and provided in relevant part that a "civic facility project may include * * * housing facilities primarily designed to be occupied by individuals sixty years of age or older provided that the total cost of such project[ ] * * * does not exceed fifteen million dollars." In 1999 the Legislature amended that section to raise the limit of the total cost of the project to $20 million (*see* L 1999, ch 444, § 1). A memorandum of the New York State Senate submitted in support of the proposed legislation stated that the "legislation would permit industrial development agencies to finance certain civic facility projects costing up to $20 million," and further stated that "[s]ection 1 amends General Municipal Law § 854 (13) to raise from $15 to $20 million, the cap upon the amount of bonds that can be issued by an industrial development agency for projects undertaken for the benefit of not-for-profit corporations" (Mem in Support, NY State Senate, 1999 McKinney's Session Laws of NY, at 1854). General Municipal Law § 854 (4) defines the term "project" as "any land, any building or other improvement, and all real and personal properties located within * * * the municipality for whose benefit the [industrial development] agency was created."

Here, PHWNY set forth in its application to ECIDA the costs associated with the development of the first phase* of the retirement community project that will eventually include assisted living facilities and a skilled nursing facility. The application approved by ECIDA contained the following breakdown of "[p]roject [c]osts": $485,000 for land acquisition, $13,760,000 for new building construction, $688,000 for machinery and equipment, and $4,735,000 for " '[s]oft' costs such as architectural, engineering, ECIDA administration, legal and other fees and construction financing interest," for a total of $19,668,000. Inasmuch as the costs set forth in the application can only be projected costs that are subject to change for reasons unforeseen at the time of the application, and in light of the legislative history of General Municipal Law § 854 (13), we conclude that the phrase "total cost of such project[ ]" refers to the amount of project costs for which ECIDA may issue bonds. That is, the $20 million limit provided for in the statute is a limit on the bonding authority of industrial development agencies, not a limit on the amount of costs that may be associated with a project. To adopt petitioners' interpretation of the phrase "total cost of such project[ ]" would entail requiring an industrial development agency to base its determination whether to issue bonds upon projected costs, which by their nature cannot be determined with certainty. Such an interpretation would, in our view, thwart the intent of the Legislature to utilize industrial development agencies to assist and support not-for-profit organizations providing housing facilities for persons 60 years of age or older (*see* Mem in Support, NY State Senate, 1999 McKinney's Session Laws of NY, at 1854-1855). Accordingly, we conclude that the Supreme Court properly dismissed the petition and that the judgment therefore should be affirmed.

---

* Petitioners contend that PHWNY created artificial phases of the retirement community project in order to be eligible for financial assistance from ECIDA and that the entire costs of the retirement community project will far exceed $20 million. Contrary to petitioners' contention, we perceive no prohibition in the General Municipal Law barring the funding of one phase of a project. The legislative history of section 854 (13) indicates that the legislation "raises the ceiling from $15 million to $20 million on *individual bond issues*" for "housing for the elderly as civic facilities" (Mem of Legislative Representative of City of NY, 1999 McKinney's Session Laws of NY, at 1855 [emphasis added]).

GREEN, J.P., WISNER, KEHOE and GORSKI, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed, without costs.